## STOCKHOLDERS' LIABILITY OF ESTATES OF DECEDENTS.

[Common Pleas Court of Licking County.]

JOHN A. ROEBLING SONS CO. v. SHAWNEE VALLEY COAL & IRON
CO. ET AL.

Decided, February, 1906.

*Stockholders—Claims on Statutory Liability and Unpaid Subscriptions
—Against the Estates of Decedents—Presentation of Claim—Stat-
ute Begins to Run, When—Personal Liability of Sole Devisee—
Bankrupt not Discharged from Stockholders' Liability, When—
Presumption that Stock Transferred at Par was Paid for in Full.*

1. It is not a condition precedent to the enforcement of stockholders'
   liability against the estate of a decedent, that the claim be pre-
   sented to the executor.
2. As to a claim for unpaid stock subscriptions, the statute begins to
   run and a right of action accrues from the appointment of a re-
   ceiver or other act of insolvency on the part of the corporation.
3. Under a will providing that all debts of the estate shall first be paid,
   the stock of an insolvent corporation comes into the hands of the
   executor as a liability, and not as an asset; but where the executor
   is also the sole devisee, and the stock is not specifically mentioned
   in the will, and is not accepted by the devisee, the statutory liabil-
   ity can not be enforced against such devisee personally.
4. A discharge in bankruptcy is not effectual to discharge a claim for
   stockholders' statutory liability or unpaid stock subscription, where
   it appears that the claim was not properly scheduled, and no notice
   of the bankruptcy proceedings was served on the corporation, and
   there is no showing that the claim was ever liquidated.
5. A stockholder purchasing stock at par is entitled to the presumption
   that the original subscriber therefor paid for the stock in full, and
   a claim on account of unpaid subscription will not lie against such
   purchaser at par.

SEWARD, J. (orally).

John A. Roebling Sons Co. v. Shawnee Valley Coal & Iron
Company et al is submitted to the court upon certain issues
raised by the answer of the executrix of the estate of Charles
W. Snider, the answer of the executors of the estate of John C.
Larwill, and the answer of John C. Hamilton, and, I might also
say, the issue as between Mrs. Catherine Snider and the plaintiff

in the case.  A reply is filed to these various answers, denying certain allegations, and the case was submitted to the court upon the issues raised by the answers and the reply.

This is a suit to collect unpaid subscriptions to the capital stock of the Shawnee Valley Coal & Iron Company and to enforce the statutory liability of the stockholders of said company. The suit was commenced June 18, 1901.  The amended petition was filed February 13, 1902.

First, as to the issues raised upon the claim against the Snider estate, and against Mrs. Snider personally:  It is said the claim was never presented to Mrs. Snider, executrix of her husband's estate, and that, by reason thereof, the estate is not liable.  She was appointed executrix January 4, 1898.  She finally settled the estate May 5, 1900.  Was it a necessary prerequisite to the suit to present the claim upon which the suit is predicated to this executrix?  As to the statutory liability, this would seem to be impossible.

Section 6108 provides that no executor or administrator shall be liable to the suit of a creditor until after the expiration of eighteen months from the date of the bond, and provides for the presentation of the claim.  Counsel are familiar with that section of the statute.  The object of the presentation of the claim before suit is that the personal representative may have notice of the demand, its amount and nature, and right to accept and pay the same without suit, and the right to make known his intention to contest by a rejection of the claim.  The claim for statutory liability is, from its very nature, unliquidated; its extent can not be ascertained except by proceedings in court such as these are.  The assets of the corporation are primarily liable for its debts, after which any balance of indebtedness not exceeding the double liability is to be made up from the solvent stockholders.  Can it be possible for a creditor to be definite and certain as to the amount of liability of any stockholder to him until after the assets have been applied to the payment of creditors, and the solvent stockholders have been ascertained?  If he can not be so definite and certain, how can proof of claim by affidavit be made?  Judge Shauck, in 1 C. C.,

105, holds that it is not necessary to present such a claim; that it is not necessary to make presentation to the administrator or executor. That from the very nature of it, it is impossible to present it.

There seems to be no reason, however, why the claim for unpaid subscription should not have been presented to the administrator or executor of the estate. That is a liquidated claim.

It is claimed that suit was not brought within two years after Mrs. Snider gave bond as executrix, and that therefore the suit can not be maintained against her as executrix. This two years statute was passed April 8, 1898, and was amendatory of Section 6113, which provides a limitation of four years for like actions. The answer of Mrs. Snider alleges that the corporation went into the hands of a receiver May 9, 1898; that it was then insolvent, and then ceased to be a going concern. What effect did the appointment of a receiver have upon the statute of limitations? Did it not have the effect to give a right of action to the creditor, which he could then pursue, and thus to start the statute of limitations to running? In a former opinion upon this subject in this case, I cited the 49 Ohio State, 663. It is the case of *Younglove* v. *Lime Company.* I will only read the second syllabus of the decision:

"When, however, the property of the corporation has been placed in the hands of an assignee in bankruptcy, or insolvency, or of a receiver appointed on its dissolution to wind up its affairs, or in some such way has been put in process of application to the payment of its debts, the creditors may proceed against the stockholders without first reducing their claims to judgment against the corporation, and the statute will run in favor of the stockholders from such time."

So that a right of action accrued as against this estate on May 9, 1898, when this institution went into the hands of a receiver—became insolvent. The statute of limitations of two years was passed April 8, 1898, and was then in force, and was the statute governing when this right of action accrued, if it did accrue, when this concern went into the hands of a receiver. Mrs. Snider was appointed executrix January 4, 1898. She settled as such executrix April 3, 1900. No claim was pre-

sented and no suit was brought until June 18, 1901, more than three years from the date of giving bond by the administratrix.

The case of *William F. Bevitt* v. *Wallace W. Diehl*, which went to the Supreme Court from Springfield, where the reply set up the four years statute of limitations, which was in force, and a demurrer was interposed to that reply, it was overruled; the judgment of the court of common pleas in that regard was sustained by the circuit court; the case went to the Supreme Court and was there affirmed; and so the Supreme Court has held that where the four years statute was in force that it was applicable to such cases. The Supreme Court affirmed that case without report, and so the court has had to rely upon the record and the brief that are furnished.

As to the personal liability of Catherine Snider growing out of the provisions of the will of her husband: The will gives her all his property absolutely, providing that she shall first pay from any *moneys* of the estate all debts and funeral expenses. It is claimed by the plaintiff that she accepted under the will; that this stock became hers, and that she is therefore liable in this action. Mrs. Snider denies that she ever accepted said shares. This stock, at the time of the appointment of Mrs. Snider, was not an asset of the estate. By virtue of the insolvency of the company, the stockholders' liability, and the unpaid subscription, it became a *liability* of the estate, instead of an asset. The stock is not specifically mentioned in the will. It is claimed, however, that her acceptance under the will bound her to pay any liability attaching to the stock whether she accepted the stock or not, or whether she received any benefit from the stock or not. That is, a person who accepts under a will that provides that that person shall pay the debts of the estate, must pay the debts whether he gets enough property out of the estate or not. There is no doubt but what if this stock had been specifically devised, and she accepted the stock, she might be held liable as a stockholder; as where real estate is devised under certain conditions, then the devisee who accepts the devise is bound by the conditions, and must assume any burden attached to the land by the devise. But in this case, the liability remained the liability of the estate, and if the bar of the statute

had not fallen would still be enforceable against.the estate. So I find as to the estate of Charles W. Snider that the bar of the statute has fallen, and the estate is not liable to the creditors of the corporation, and that Catherine Snider never accepted the stock and she is not therefore liable for the burdens attaching to it.

As to the issue between the plaintiff and John C. Hamilton: John C. Hamilton pleads his discharge in bankruptcy. The reply admits that Hamilton made an application·praying to be discharged; that he received a certificate of discharge, but denies that he is discharged from this claim. It says that Hamilton did not name the Shawnee Valley Coal & Iron Company as a creditor; nor did he include the amount due said company for unpaid subscription. That he did not cause or seek to cause his liability upon his stock to be liquidated by said bankruptcy court or any other court. It is shown that in the list of his creditors he stated a possible stockholders' liability to the corporation. From what debts would the proceeding release him? The Bankruptcy Law, Section 17, page 25, edition of July 1, 1898, reads as follows:

"[*Debts not affected by a discharge.*] A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (1) are due as a tax levied by the United States, the state, county, district or municipality in which he resides; (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another; (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy; or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

It is claimed that no notice was given to the Shawnee Valley Coal & Iron Company, or to the plaintiff in this case, which is now seeking to enforce the statutory liability of stockholders. Section 58, page 41, provides as to notice:

"Creditors shall have at least ten days notice by mail, to their respective addresses as they appear in the list of creditors of the bankrupt, or as afterwards filed with the papers in the case

by the creditors, unless they waive notice in writing, of all examinations of the bankrupt; (2) all hearings upon applications for the confirmation of compositions or the discharge of bankrupts," etc.

It is claimed that no notice was ever given of the application of John C. Hamilton to the Shawnee Valley Coal & Iron Company, or the creditors, for discharge; and the testimony shows in this case that this company, while it was not a going concern, held meetings of the stockholders, or directors; that Mr. Ward was secretary, after these proceedings were commenced, or at the time; and he takes the stand and testifies that he never got any communication, and Mr. Smith says that none ever came to him, and that he never got any communication or notice. So that I find that no notice was served upon the Shawnee Valley Coal & Iron Company; that it received no notice; and I find also that the indebtedness was not properly scheduled, if scheduled at all.

What effect do the proceedings have upon debts not properly scheduled? It will not effect a discharge, unless the creditor had actual notice. The Law and Proceedings in Bankruptcy, Loveland, Section 292, page 624:

"A discharge will not release a bankrupt from debts which have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy. Where the court has jurisdiction and the claims have been placed upon the schedule, or if omitted from it and the creditors have had notice or actual knowledge of the proceedings, the debt, if provable, is released by the discharge.

"The rule established by the present act is quite different in many respects from that under the act of 1867. Under that act, if the notice required by the statute had been duly published, the discharge was held to bar the debt, although the name of the creditor was not placed on the schedule nor notice given to him. That is not the case under the present bankruptcy law. Unliquidated claims can not be proved; they must first be liquidated. Loveland, page 245, Section 128.

"A claim to be proved in bankruptcy must be liquidated. The present bankruptcy act provides for liquidating unliquidated claims in the following words: 'Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate.'

"Unliquidated claims which may be liquidated and proved under this provision are numerous and varied. Familiar examples are damages for breach of executory contracts, damage for breach of covenants in a contract and stockholder's liability." And other claims that it is not necessary to mention.

The law provides that a person can go into the court, and insist that the claim be liquidated by the court, and has a right to have such proceedings had in regard to that claim as will liquidate it, and ascertain the amount due upon it as against the bankrupt.

Section 63, page 44, Subdivision *b* of the Bankrupt Law provides:

"Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

Therefore, they can not be proved before liquidation, as a matter of course. That would necessarily follow.

The 40 Bul., 220-226, is cited to the court by both sides in the argument of this case, and it is claimed to bear out both contentions. It is a case in the U. S. District Court, N. D., E. D., before Harold Remington, Referee, *In the matter of Benjamin L. Rouse, bankrupt.*

"(1). A stockholder's statutory liability in an insolvent Ohio corporation is not only a liabilty created by statute, but is also a claim founded upon an implied contract, and, as such, is a provable debt against the estate of the bankrupt stockholder, whenever the circumstances are such that a stockholder's liability suit would lie.

"(2). It is an unliquidated claim, and, upon application to the court, the court will direct the manner of its liquidation.

"(3). But the court will not proceed to direct the manner of liquidation unless application is made to it therefor.

"(4). In cases of stockholder's double liability, the court may direct that a stockholder's liability suit be instituted by the creditor making the application, or that an already pending suit in the state court be maintained for the purpose of liquidating the claim; or, if the facts are simple and undisputed, may itself undertake to determine the amount provable as the bankrupts stockholder's liability, and to whom the same is payable."

The court say on page 226:

"Now it seems to me that the real question is not whether the stockholder's liability is a provable debt or not, but is rather whether or not it is an unliquidated debt, and, if an unliquidated debt, how the court shall direct it to be liquidated.

"I can easily see that in many cases the bankruptcy court will direct the claimant, after he has filed his proof of debt, to proceed to liquidate the claim in a stockholder's liability suit before admitting the same to proof or allowing it. But I can also understand how in some cases, where the facts are all admitted, and are all simple and not complicated, the court will itself make the computation."

Then he says:

"It might be so simple a question that the referee could, upon the submission of proper evidence, himself liquidate the respective claims of corporate creditors, but the claimants who here appear, neither present any testimony as to the probable debts of the corporation, solvency of the stockholders, nor any other data except such as appear in their deposition for proof of debt, nor do they make application to the court in accordance with Section 63b [that is the section that I just read] for the court to direct the manner of liquidation. In fact, they refuse to do or attempt to do these things. This being so, they stand in the position of claimants who, having debts which are no doubt provable, are yet unwilling to comply with the statutory requirements for proof of them, and for this reason and not because their claims are in their nature unprovable, the court and referee will not allow them to participate in the election of trustee, and will postpone the admission of their claims to proof and allowance."

So that this court holds in this case that while the debt may be provable, it must be proven. The testimony does not show that the double liability or unpaid subscription was properly scheduled. It does not show notice to the corporation; it does not show that the claim was ever liquidated; and, therefore, the discharge of Hamilton was not effectual to discharge this claim.

As to the John C. Larwill estate, unpaid subscription and double liability:

As to unpaid subscription on the Larwill stock:

It is claimed that Larwill paid full face value without knowledge that the stock was issued for less than par. Cook on Corporations, Section 50, 4th Ed., says:

"A *bona fide* purchaser for value and without notice of stock issued by a corporation as paid up can not be held liable on such stock in any way, either to the corporation, corporate creditors, or other persons, even though the stock was not actually paid up as represented. Such a person has a right to rely on the representations of the corporation that the stock is paid up. Difficulty sometimes arises in determining what will constitute a sufficient representation that the stock is paid up. A representation by the corporate agents that the full par value will not be required is insufficient. The word "non-assessable" stamped or printed or written on the face of the certificate, is not a sufficient representation that the stock is paid up, so as to protect a *bona fide* purchaser thereof, where the certificate also shows that only twenty per cent. has been paid thereon. Where, however, a statement is made on the face of the certificate that it is paid up stock, the *bona fide* purchaser of the certificate need not inquire further, but may rely on that representation, and is protected thereby against liability."

In a note it is said:

"Here the appellant is a *bona fide* holder of shares upon which, no doubt, there was a false statement made by the company, of which he had no knowledge, and as to which he was under no obligation to inquire."

He could rely upon the certificate of stock; if it did not show that it was not all paid up, he could rely upon it, and the presumption was that it was paid.

"A purchaser or assignee of stock which has not been fully paid does not become liable to the corporate creditors for the unpaid balance, where the stock has been issued as fully paid [as it was in this case, as is shown by the certificate] and he has acquired the same in good faith, and without notice that it has not been fully paid."

Also, Section 257 of this same book:

"The question whether the purchaser of shares is bound to take notice that the stock he purchases is not fully paid for is a serious and complicated one. The better opinion, and the one most in accord with the usages and demands of trade is that, where one buys stock in open market, in good faith, and without notice that the subscription price thereof has not been paid up, such a purchaser can not be held liable to pay the unpaid balance of subscription."

That is likewise held in the 74th Fed., 118, and the 154th Ill., 458.

There is nothing upon the face of the certificates to indicate that par has not been paid by the person to whom the stock was originally issued, and the purchaser in good faith of the stock on the market from a holder of the certificate has a right to rely upon the presumption that the stock subscription was paid in full. Larwill's executors claim that he paid full value without knowledge. There is no testimony showing that Larwill had knowledge that only 30 per cent. of the stock was paid, and he is entitled to the presumption that it was paid in full, and can not be held liable for the unpaid subscription. But, this principle has no application to stockholders' liability, and the court holds that he is liable to an assessment on the stock liability.

*A. A. Stasel*, for plaintiff.

*Hunter & Hunter, Kibler & Montgomery, J. B. Jones* and *Jonathan Rees*, for defendants.